Robert P. Goe – SBN 137019
Stephen P. Reider – SBN 287820
GOE & FORSYTHE, LLP
18101 Von Karman Ave., Ste. 510
Irvine, CA 92612
Email: rgoe@goeforlaw.com
sreider@goeforlaw.com
Telephone: (949) 798-2460
Facsimile: (949) 955-9437

Attorneys for Playhut, Inc.

Rom Bar-Nissim (CA 293356)
FOX ROTHSCHILD LLP
10250 Constellation Place Ste. 900
Los Angeles, CA  90067-1506
Tel:  310-598-4150
Fax: 310-556-9828
Email: rbar-nissim@foxrothschild.com

Mette H. Kurth (CA 187100/DE 6491)
FOX ROTHSCHILD LLP
919 North Market Street, Ste. 300
Wilmington, DE 19899-2323
Tel: 302-654-7444
Fax: 302-656-8920
mkurth@foxrothschild.com

Counsel for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>**PLAYHUT, INC.,**<br><br>Debtor. | Case No. 2:18-bk-15972-WB<br><br>Chapter 11<br><br>**NOTICE OF SUBMISSION OF PROPOSED STALKING HORSE TERM SHEET**<br>Hearing<br>Date:    Friday, September 21, 2018<br>Time:   10:00 a.m.<br>Place:   Courtroom 1375, 13th floor<br>            255 E. Temple Street<br>            Los Angeles, CA  90012 |

**TO:  THE HONORABLE JULIA W. BRAND, UNITED STATES BANKRUPTCY JUDGE; AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on September 13, 2018, the Debtor and Official Committee of Unsecured Creditors of PlayHut, Inc. (the "Committee") filed the *Emergency Motion for Entry of an Order (A) (I) Scheduling a Hearing on the Approval of the Sale of all Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, and (III) Granting Related Relief; and (B) (I) Approving Asset Purchase Agreement,*

*(II) Authorizing the Sale of all or Substantially all of the Debtor's Assets Free and Clear of all Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Motion") [Docket No. 153]. The Court entered an order granting the Motion on September 20, 2018 [Docket No. 172] and set a continued hearing to consider approval of any "stalking horse" bidding protections. In accordance therewith, attached hereto as **Exhibit A** is the proposed Stalking Horse term sheet, which includes the following bidding protections with respect to the proposed purchaser, Explore Scientific, LLC ("Buyer").

In the event that Buyer offer is overbid at the auction, and on that account, Purchaser is not the winning bidder, then upon closing of the sale to the overbidder Purchaser shall be paid out of the sale proceeds: (i) the reasonable out-of-pocket fees, costs and expenses of Buyer incurred in connection with the preparation, negotiation, execution, delivery and performance of this Term Sheet and/or the APA, not to exceed Fifty Thousand Dollars ($50,000) (the "Expense Reimbursement") and (ii) the payment of a break-up fee that is equal to Three Percent (3%) of the Closing Date Cash Payment (the "Break-Up Fee" and together with the Expenses Reimbursement, the "Bid Protections"); provided, however, that no Break-Up Fee will be earned by or payable to the Buyer with respect to any credit bid by Seller's secured lender, Preferred Bank.

The obligations of Seller to pay the Bid Protections (i) shall be entitled to super-priority administrative expense claim status under Section 503 and 507 of the Bankruptcy Code, (ii) shall not be subordinate to any other administrative expense claim against Seller other than the administrative expense claims of Seller's secured lender, Preferred Bank; and (iii) shall survive the termination of this Term Sheet and the APA.

///
///
///
///
///

2

ACTIVE\65249325.v1-9/21/18

| | | |
|---|---|---|
| 1 | | Respectfully submitted by, |
| 2 | Dated: September 21, 2018 | **GOE & FORSYTHE, LLP** |
| 3 | | **By:** */s/ Robert P. Goe* |
| 4 | | Robert P. Goe
*Attorneys for Playhut, Inc.* |
| 5 | | |
| 6 | | **FOX ROTHSCHILD LLP** |
| 7 | | **By:** */s/ Mette H. Kurth* |
| 8 | | Mette H. Kurth
*Counsel for the Official Committee of Unsecured Creditors* |

ACTIVE\65249325.v1-9/21/18

3

# EXHIBIT A

**PLAYHUT, INC.**

# TERM SHEET PROPOSAL

1. **The Parties.** A special purpose limited liability company which will be an affiliate or subsidiary of Explore Scientific, LLC, an Arkansas limited liability company ("Buyer") proposes to purchase substantially all of the assets of Playhut, Inc. ("Seller"), subject to approval by the United States Bankruptcy Court for the Central District of California (the "Court") and pursuant to the bidding procedures approved by the Court on or about September 17, 2018 (the "Bidding Procedures"), on the terms and conditions set forth herein, subject to final documentation and execution of a binding asset purchase agreement (the "APA").

2. **A Sale Free & Clear Pursuant to Section 363.** Seller will seek approval of the sale to Buyer pursuant to Bankruptcy Code section 363. The sale will be free and clear of all liens, claims, and encumbrances and will be "as is/where is."

3. **Purchase Price.** The consideration provided by Buyer will consist of the following (the "Purchase Price"):

    a. Cash in the amount of $1,000,000 (the "Cash Payment"), payable as follows: The sum of $363,000 shall be paid by Buyer to Seller on the Closing Date. The sum of $318,500 (the "Year One Payment") will be due and payable to Seller on the first-year anniversary of the Closing Date; provided however, if the Royalty Payments paid to Seller throughout the year shall equal or exceed the Year One Payment then such payment shall not be due. The remaining balance of the Cash Payment shall be due and payable to Seller on the second-year anniversary of the Closing Date; provided however, if the Royalty Payments paid to Seller throughout the year shall cause the total cash paid by the Buyer to the Seller as either Royalty Payments or Cash Payment to equal or exceed the Cash Payment, Payment then such payment shall not be due. The first $1,000,000 of Royalty Payments (as defined below) shall be applied against and reduce the Cash Payment due and owed to Seller.

    b. Royalty payments over five (5) years, paid on a semi-annual basis as follows, to be credited against royalty payments otherwise due (collectively, the "Royalty Payments"):

        i. Remainder of 2018 and 2019: 10% of Buyer's gross sales less any licensing percentage or royalty payable to a Third-Party Licensor (as such term is defined below) (the "Adjusted Gross Sales").

        ii. 2020: 7.5% of the Adjusted Gross Sales.

        iii. 2021-23: 5% of the Adjusted Gross Sales.

4. **Purchase Price Allocation.** The Purchase Price is allocated as follows: (a) up to $155,000 for Purchased Inventory; (b) $8,000 for a plotter machine; and (c) $200,000 for intellectual property, including the PCC Patent Rights; and (d) the balance of the Purchase Price, consisting of the royalty payments, as consideration for the remainder of the Purchased Assets.

5. **Security for Royalty Payments.** Buyer will pledge all of its assets as security for payment of the Royalty Payments contemplated herein through the duration of such royalty period, terminating on December 31, 2023 with the terms and conditions of such Royalty Payments being set forth in a separate Royalty Agreement by and between Buyer and Seller.

6. **Purchased Assets**. Seller will sell to Buyer all or substantially all assets not otherwise designated as an Excluded Asset (the "Purchased Assets"), including but not limited to the following:

   a. **Accounts Receivable.** All accounts receivable generated from sales occurring after the Closing Date.

   b. **FF&E.** All design-based assets, including Seller's systems, equipment, machinery, and products as well as a plotter machine for prototyping and certain product development materials.

   c. **Intangibles and Intellectual Property.** The "Playhut" name all related brands, intellectual property, goodwill, website, domain names, accounting files and other intangible assets related to the "Playhut" name, brand, and products.

   d. **Inventory.** All inventory identified on the Inventory Spreadsheet which shall be attached as Exhibit A to the APA (the "Purchased Inventory"). The parties agree and acknowledge that the Buyer has identified on the Inventory Spreadsheet certain items which the Buyer believes may not have a possible go forward due to licensing disruption due to such licensing agreements providing for terms that will negate their validity upon a sale of Seller or its assets. The Buyer will provide confirmation of its willingness to purchase such inventory items prior to the Closing Date. The parties understand that the rejection of such inventory items will reduce the Purchase Price on a dollar-for-dollar basis but in no event shall such reduction exceed $120,000.

   e. **The PCC Patent Rights**. All of Seller's rights with respect to the patents and intellectual property transferred from Seller to PCC (the "PCC Rights"), including: (a) the licensing agreements between Playhut and PCC; (b) the related entity account receivable owed by PCC to Seller in the amount of approximately $1,097,026. In addition, Seller's secured lender will assign to Buyer, on a no reps/no recourse basis, a note and security agreement secured by all or substantially all of PCC's assets.

7. **Excluded Assets.**

   a. **Cash, Cash Equivalents & Financial Assets.** Playhut's checking, savings, money market, or financial brokerage accounts, consisting of the following and in a collective amount of roughly $190,000.

       i. Preferred Bank checking accounts #1096, 1843, 0502, 5728, 6245, 5075.

       ii. Chase Bank checking account #012.

       iii. Bank of America checking account #7830.

       iv. ICBC – Industrial Commercial Bank of China checking account #5801.

       v. The Disney Account. Checking account with Preferred Bank securing the Disney letter of credit (estimated balance $0).

   b. **Accounts Receivable.**

       i. **Black Friday Accounts Receivable and Inventory Rights.** All currently financed and/or factored accounts receivable, including the "Black Friday" accounts receivable, generated by sales occurring on or before the Closing Date. Seller will be responsible for any and all

2

costs, royalties, or commissions related to orders comprising the Black Friday accounts receivable. Buyer will accept shipments of such inventory in the ordinary course, breakdown and re-assemble pallets as required for order fulfilment, and ship such inventory to the customer in the usual and ordinary course of business (the "Repalletization Expenses"); provided, however, Buyer will advance up to $30,000 for the Repalletization Expenses with any excess Repalletization Expenses being paid by Seller. Seller shall reimburse Buyer for the Repalletization Expenses advanced by Buyer from the payments on the accounts receivable for such "Black Friday" accounts within ten (10) days of receipt of such payments.

   ii. **Insider Accounts Receivable.** The following accounts receivable (the "Insider A/R"): (i) a related entity account receivable from NBK (Ichief) in the amount of approximately $947,970; (ii) a related entity account receivable from Azooca in the amount of approximately $2,318,738; and (iii) an "other receivable" in the amount of $133,942 from Brian Zheng for personal expenses.

c. **Surplus Inventory.** All inventory other than the Purchased Inventory will be an excluded asset; *provided, however*, that Buyer may separately bid for the excluded inventory pursuant to the Bidding Procedures.

d. **Deposits & Prepayments.** Deposits and prepayments with respect to utility services, executory contracts and unexpired leases, insurance premiums, expenses, state income taxes, royalty obligations, etc.; *provided, however*, that any deposits with respect to executory contracts or unexpired leases assumed and assigned to Buyer will be included in the Purchased Assets.

e. **Estate Claims and Causes of Action.** All claims the Seller has against Toys "R" Us and its affiliates, including asserted general unsecured, priority and administrative claims; reference and fraudulent transfer actions arising under federal or state law; turnover actions; litigation claims or causes of action for breaches of fiduciary duty; all commercial tort claims; and any and all other claims or causes of action existing in favor of Seller as of the Closing Date.

8. **Excluded Liabilities.** All of Seller's liabilities will be deemed to be excluded liabilities which will not be assumed and assigned to Buyer, unless Buyer expressly identifies a liability as an assumed liability, as set forth in a schedule to be attached to the APA ("Assumed Liabilities").

9. **Executory Contracts, Unexpired Leases, and Post-petition Contracts.**

   a. Seller is a party to the following executory contracts and unexpired leases (the "Playhut Contracts and Leases"):

      i. A commercial real estate lease with respect to its headquarters and warehouse located at 18560 San Jose Avenue, City of Industry, CA (the "Playhut Headquarters"), leased from BPP Shiraz Fullerton 89 LP (the "Headquarters Lease"). The Buyer agrees to pay fifty percent (50%) of the cost associated with the Headquarters Lease on a pro rata basis for each allocable day in which the Buyer or any Purchased Assets are occupying space within the Playhut Headquarters. The parties expressly acknowledge that Buyer will not assume the Headquarters Lease or any obligations arising thereunder other than the aforementioned allocation of the pro rata rent payment.

      ii. Various licensing agreements, including but not limited to agreements with Disney Consumer Products, Inc.; Mattel, Inc.; Sesame Street Corporate Office; Universal Studios Licensing; Nickelodeon Network; and Viacom International, Inc. (collectively, the "Third-Party Licensors").

      iii. A general liability insurance contract with Hartford.

      iv. A workers' compensation insurance contract with American Zurich.

b. The Seller is also party to a post-petition financing agreement with Gateway (the "Gateway Financing").

c. It is anticipated that the Buyer will not assume any of the Playhut Contracts and Leases or the Gateway Financing. However, the Buyer may designate any of the Playhut Contracts and Leases and/or the Gateway Financing as "Assumed Contracts" as set forth in the Bidding Procedures, in which case Buyer will be solely responsible for all cure payments associated with the assumption and assignment of any Assumed Contract.

d. The Buyer shall have the right to contact any or all of the Third-Party Licensors to negotiate the terms of any agreement with such Third-Party Licensor up until the Closing Date (or thereafter if agreed by the Seller) on such terms and conditions as the Buyer shall deem acceptable in its sole and absolute discretion.

e. Any of the Playhut Contracts and Leases or the Gateway Financing, if not designated as Assumed Contracts, will be excluded from the Purchased Assets and Assumed Liabilities.

f. Unless the Headquarters Lease is designated as an Assumed Contract and the Court approves the assumption and assignment of such lease to Buyer, the Buyer will remove all Purchased Assets from Playhut Headquarters no later than ten (10) days following the sale closing.

g. Buyer acknowledges that Seller intends to request authority from the Court to reject all Playhut Contracts and Leases other than the Assumed Contracts following the Sale Hearing.

10. **Employees.** Buyer has no obligation to assume employment agreements with any of the Playhut employees. Buyer may, however, in its sole discretion, make offers of employment to any of the Playhut employees.

11. **Stalking Horse Protections.** In consideration for the Buyer having expended considerable time and expense in connection with this Term Sheet, the negotiation hereof and the identification and quantification of assets of Seller, Seller shall pay in cash to Buyer promptly upon the effective date of termination of the APA, in accordance with and as provided therein, (i) the reasonable out-of-pocket fees, costs and expenses of Buyer incurred in connection with the preparation, negotiation, execution, delivery and performance of this Term Sheet and/or the APA, not to exceed Fifty Thousand Dollars ($50,000) (the "Expense Reimbursement") and (ii) the payment of a break-up fee that is equal to Three Percent (3%) of the Closing Date Cash Payment (the "Break-Up Fee" and together with the Expenses Reimbursement, the "Bid Protections"). The obligations of Seller to pay the Bid Protections (i) shall be entitled to super-priority administrative expense claim status under Section 503 and 507 of the Bankruptcy Code, (ii) shall not be subordinate to any other administrative expense claim against Seller and (iii) shall survive the termination of this Term Sheet and the APA.

This Term Sheet may be executed via facsimile or electronically (specifically including portable device format (.pdf), DocuSign, HelloSign or other electronic signature program, transmission or method), through the use of separate signature pages or in any number of counterparts, and each such counterpart shall, for all purposes, constitute one instrument, notwithstanding that all parties are not signatories to the same counterpart.

[R<small>EMAINDER OF PAGE INTENTIONALLY BLANK</small>; S<small>IGNATURE PAGE FOLLOWS</small>]

This Term Sheet is presented and entered into on the 20th day of September, 2018. If the terms and conditions contained in this Term Sheet are satisfactory, please sign as indicated below. Buyer looks forward to an expeditious sand successful closing of this transaction.

BUYER:
EXPLORE SCIENTIFIC, LLC
for its affiliated special purpose entity

By: _____
Robert Price, Manager

SELLER:
PLAYHUT, INC.

By: _____
James Wong, Chief Restructuring Officer

6

ACTIVE\65260406.v1-9/21/18

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Fox Rothschild LLP, 1980 Festival Plaza Drive, Suite 700, Las Vegas, NV 89135.

A true and correct copy of the foregoing document entitled (*specify*):    **NOTICE OF SUBMISSION OF PROPOSED STALKING HORSE TERM SHEET**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>September 21, 2018</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Raymond H. Aver    ray@averlaw.com, averlawfirm@gmail.com;ani@averlaw.com;katya@averlaw.com
- Steven P Chang    heidi@spclawoffice.com, schang@spclawoffice.com,assistant1@spclawoffice.com,attorney@spclawoffice.com;g9806@notify.cincompass.com;chenghr75251@notify.bestcase.com
- Theodore A Cohen    tcohen@sheppardmullin.com, amontoya@sheppardmullin.com
- Lauren A Deeb    lauren.deeb@nelsonmullins.com, zora.thomas@nelsonmullins.com;lori.stewart@nelsonmullins.com
- Lei Lei Wang Ekvall    lekvall@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Michael G Fletcher    mfletcher@frandzel.com, sking@frandzel.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
- Stella A Havkin    stella@havkinandshrago.com, havkinlaw@earthlink.net;r49306@notify.bestcase.com
- Bradford G Hughes    bhughes@Clarkhill.com, scontreras@clarkhill.com
- Shanna Kaminski    skaminski@schaferandweiner.com, pjozwiak@schaferandweiner.com
- Mette H Kurth    mkurth@foxrothschild.com, mette-kurth-7580@ecf.pacerpro.com
- Alvin Mar    alvin.mar@usdoj.gov
- Robert S Marticello    Rmarticello@swelawfirm.com, csheets@swelawfirm.com;gcruz@swelawfirm.com;jchung@swelawfirm.com
- Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Stephen Reider    sreider@goeforlaw.com, kmurphy@goeforlaw.com;campbellwr79778@notify.bestcase.com
- Ryan M Salzman    ryan.salzman@dbr.com, willie.ackart@dbr.com
- Randye B Soref    rsoref@polsinelli.com, enash@polsinelli.com;ladocketing@polsinelli.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Reed S Waddell    rwaddell@frandzel.com, sking@frandzel.com
- Gerrick Warrington    gwarrington@frandzel.com, dwise@frandzel.com

ACTIVE\65249325.v1-9/21/18

**2. SERVED BY UNITED STATES MAIL:**
On September 21, 2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

- Marita S Erbeck
  DRINKER BIDDLE & REATH LLP
  600 Campus Drive
  Florham Park, NJ 07932-1047

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 21, 2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Julia W. Brand
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1382
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| _September 21, 2018 | Patricia Chlum | */s/Patricia Chlum* |
|---|---|---|
| Date | Printed Name | Signature |

5

ACTIVE\65249325.v1-9/21/18